548 F.Supp. 1012 (1982)
Carlo TORIMINO, Plaintiff,
v.
UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION INDUSTRY PENSION FUND, Defendant.
No. 80-0508-C(5).
United States District Court, E. D. Missouri, E. D.
September 20, 1982.
Stephen H. Gilmore, Harry J. Nichols, St. Louis, Mo., for plaintiff.
Paul S. Kuelthau, Moller, Talent, Kuelthau & Welch, St. Louis, Mo., Jack L. Whitacre, Kansas City, Mo., Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Stephen T. Jacobs, Milwaukee, Wis., for defendant.

MEMORANDUM
CAHILL, District Judge.
This matter is before the Court on the plaintiff's motion to amend judgment.
*1013 Plaintiff commenced this action in state court, and it was subsequently removed to this Court by the defendant. In his complaint plaintiff, Torimino, alleges that he was an employee in the meat packing industry and a member of Local 545 of the Amalgamated Meat Cutters and Butcher Workmen of North America at the time he became disabled. He asserts that the defendant, the Union's pension fund, refused to pay disability benefits to which he was entitled. On June 30, 1982, this Court entered a judgment in favor of the defendant.
Review by the courts of the trustees' decision is limited, and a reviewing court will intervene in the administration of a pension plan only where the trustees' action is arbitrary, capricious, or an abuse of discretion. Quinn v. Burlington, Northern, Inc. Pension Plan, 664 F.2d 675, 678 (8th Cir. 1981); cert. denied, ___ U.S. ___, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982). Plaintiff Torimino contends there is no evidence supporting the pension fund's decision denying disability benefits, therefore, this denial is arbitrary, capricious, and an abuse of discretion. Review of the evidence reveals otherwise.
Evidence exists supporting Torimino's claim of total disability; however, it is not uncontradicted. A medical statement by Dr. Robert E. Kuhlman, M.D., dated February 11, 1976, indicates that plaintiff "had hemilaminectomy and discectomy of the L4-5 space" and that "[h]e might return to light work if it were available (emphasis added)." (See Exhibit D.) Dr. Walter J. Karr, Medical Consultant, in his medical director's statement dated March 2, 1976, concluded that plaintiff was not totally and permanently disabled. Following this conclusion, Dr. Karr states that plaintiff's "back problem does not preclude sedentary work" in that "his doctor (Dr. Kuhlman) states he can return to some form of light work if it were available to him" (See Exhibit F.) In a medical report from Dr. Robert W. Tatkow dated March 16, 1976, he asserts that he is not sure how much of plaintiff's disability is from anxiety and how much is from his lower back injury but it is obvious that he is unable to perform any work requiring heavy lifting over perhaps twenty to twenty-five pounds. He further indicated that a psychiatric examination might be needed. (See Exhibit G.) Again on March 30, 1976, Dr. Karr in his medical director's statement found that plaintiff was not totally and permanently disabled and concluded that plaintiff could "perform sedentary and nonlifting jobs." (See Exhibit H.) A letter by Dr. Ralph J. Graff, M.D., to Mr. Gene Spengel dated November 1, 1978, indicates that in Dr. Graff's opinion plaintiff has a 40% permanent partial disability as a result of his back injury of 1975. (See Exhibit Q.)
This Court, on March 31, 1981, remanded this matter to the Trustees of the pension fund, with instructions to consider Torimino's lung condition and pulmonary functions in determining his disability. This Court also advised the Trustees that evidence regarding Torimino's vocational capability would be most helpful in determining this matter. Subsequently, an evaluation by Dr. T. J. Fitzgerald, Ph.D., stated that because of his age, physical condition, and present labor conditions, Torimino was unable to engage in substantial gainful employment and could in no way compete on the open labor market. Also, a new examination by Dr. James W. Walsh, M.D., an internist, merely noted Torimino's physical condition and made no determination on his disability status. Dr. Karr, after reviewing Dr. Walsh's report, stated on the basis of that exam he found nothing which would make him change his previous opinion that Torimino was not totally and permanently disabled on August 25, 1975.
The Trustees then reviewed the previously submitted evidence, the report from vocational specialist Dr. Fitzgerald, the report from internist, Dr. Walsh, and the report from medical consultant, Dr. Karr. After reviewing this evidence, the Select Committee, the full Board of Trustees, and the Appeals Committee each determined that Mr. Torimino was not eligible for a disability pension, as his disabilities did not amount to "total and permanent disability" as defined by the pension plan rules.
*1014 This Court is very concerned about cases, such as this one, wherein disabled persons are denied disability benefits. There is medical evidence that Torimino is totally and permanently disabled. Furthermore, there is an evaluation by a vocational counselor stating that Torimino is unemployable because of the combination of his physical ailments and lack of job skills. This Court, however, cannot try this matter de novo, and is limited in its scope of review. Quinn, 664 F.2d at 678. Although this Court may have concluded differently, there is medical evidence supporting the Trustee's decision. Because there is evidence supporting the Trustees' decision, it is not arbitrary, capricious, or an abuse of discretion.
Torimino next contends that the pre-1977 standard of totally and permanently disabled used by the Trustees is unreasonable. He states that the standard as applied to him presents a "structural defect" because it excludes a number of union members with no reasonable purpose behind the exclusion, and fails to satisfy the requirement that the fund shall be for the "sole and exclusive benefit" of all the employees. 29 U.S.C. § 186(c)(5); Burroughs v. Board of Trustees of the Pension Trust Fund for Operating Engineers, 542 F.2d 1128 (9th Cir. 1976). Any eligibility standard, he contends, that does not promote the benefit of covered employees is prima facie unreasonable. Roark v. Lewis, 401 F.2d 425 (D.C. Cir. 1968). This argument is unpersuasive.
The Supreme Court, in the recent case of United Mine Workers of America Health and Retirement Funds v. Robinson, ___ U.S. ___, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), has construed the "sole and exclusive benefit" language of § 186(c)(5) to mean simply that the funds must accrue to the benefit of employees and their families and dependents, to the exclusion of all others. 102 S.Ct. at 1231. This language does not embody a reasonableness requirement. 102 S.Ct. at 1231, 1233. Nor does this language place any restriction on the allocation of the funds among the applicable employees. 102 S.Ct. at 1232. The applicable standard of review in a case such as this, where the Trustees have full authority on questions of coverage and eligibility, is whether the Trustees broad discretion has been abused by the adoption of arbitrary or capricious standards. 102 S.Ct. at 1233.
The Trustees in the present case have not abused this broad discretion by adopting arbitrary or capricious standards. Article III, section 4.1, of the pension plan rules set forth the definition of total and permanent disability:
An Employee shall be considered to be Totally and Permanently Disabled only if the Trustees, in their sole and absolute judgment, find, on the basis of medical evidence, that:
(a) He has been totally disabled by bodily injury or disease so as to be prevented from engaging in any further employment except for such employment or gainful pursuit at which he is unable to earn more than $100 per month.

(b) Such disability will be permanent and will continue during the remainder of his life.

The primary purpose of this pension fund is to promote the welfare of the members of the United Food and Commercial Workers International Union who have retired or suffered a total and permanent disability. In formulating eligibility requirements, the Trustees had the responsibility of insuring that disability benefits would be available to those who were totally and permanently disabled. This Court cannot say that defining as totally disabled those who are unable to earn more than $100 per month is an abuse of discretion.
Torimino argues that this $100 requirement is unreasonable because an individual earning $101 per month after an injury is in no better economic position than an individual earning $99 per month after an injury. This argument could be made regarding any numerical figure chosen by the trustees and does not render this $100 standard unreasonable. The use of a numerical standard is not invalid as an abuse of discretion. Johnson v. Botica, 537 F.2d 930, 936-37 (7th Cir. 1976). Congress has specifically approved *1015 the validity of numerical cutoff points in determining the minimum participation standards for pension benefits under the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. § 1052(a)(3)(A). A rule determining benefit eligibility under a pension plan which ties eligibility to a numerical measure necessarily results in a denial of benefits for those who fail to satisfy the eligibility test by as little as one point. This loss of benefits is inherent in any eligibility scheme that creates numerical categories and does not justify invalidating the plan. Johnson, 537 F.2d at 937.
Accordingly, plaintiff's motion to amend judgment is DENIED.