**NIAGARA OF WISCONSIN PAPER CORPORATION, Plaintiff,**

v.

**The PAPER INDUSTRY UNION–MANAGEMENT PENSION FUND; Wayne E. Glenn, Joe J. Bradshaw, James Dassaro, John E. Price, Irving Rolnick, Robert Sherry, Arnold Nemiro, and M.L. Talmadge, Trustees of the Paper Industry Union Management Pension Fund, Defendants.**

Civ. No. 4–83–454.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 12, 1984.

Stuart Williams, Henson & Efron, Minneapolis, Minn., for plaintiff.

Michael J. Dell, Kramer, Levin, Nessenn, Kamin & Frankel, New York City, Byron E. Starns, Leonard, Street & Deinard, Minneapolis, Minn., for defendants.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff, Niagara of Wisconsin Paper Corporation (Niagara), brought this action for damages and injunctive relief against defendants, the Paper Industry Union-Management Pension Fund and its Trustees (collectively "the Fund"), alleging that the Fund arbitrarily and capriciously cancelled past service credits of Niagara's employees, refused to participate in arbitration demanded by Niagara to which Niagara has a statutory right, and caused Niagara to pay monies in excess of its properly calculated withdrawal liability. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1337, and 29 U.S.C. §§ 186(e), 1132, and 1451(c). The Fund filed a counterclaim seeking $18,880.41 in interest and penalties arising from Niagara's alleged failure to pay its January 1981 contribution to the Fund in a timely manner. Jurisdiction is alleged under 29 U.S.C. § 1132(e)(1).

### I.

This matter originally came before the court on Niagara's motion for a preliminary injunction barring the Fund from collecting Niagara's outstanding withdrawal liability. That motion was denied by order of this court dated August 11, 1983. The Fund subsequently moved for summary judgment. By order dated December 23, 1983, the court granted the Fund's motion on Counts I and III which sought to compel arbitration of its statutory withdrawal liability to the Fund. With respect to Counts II and IV, which are based on both the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and the Labor Management Relations Act (LMRA), 29 U.S.C. § 141 *et seq.*, the court granted the Fund's motion for summary judgment insofar as those counts are based on ERISA. The court held that it did not have subject matter jurisdiction over the ERISA claims and that Niagara did not have an implied cause of action under ERISA. The court held that it could have jurisdiction over LMRA claims and denied the motion to dismiss the portions of Counts II and IV based on the LMRA.

Both parties then moved for summary judgment on the remaining LMRA counts. In a Memorandum Opinion and Order dated August 8, 1984, 603 F.Supp. 1420, the court found as a matter of law that no violation of the LMRA had occurred, granted the Fund's motion, and dismissed Niagara's complaint.[1]

This matter is now before the court on Niagara's motions, pursuant to Fed.R. Civ.P. 54(b) and 56(f), for reconsideration of the Memorandum Opinion and Order dated August 8, 1984; for further discovery; and for leave to amend to plead a breach of contract claim under § 301 of the LMRA, 29 U.S.C. § 185. The Fund's motion for attorney's fees pursuant to 29 U.S.C. §§ 1132(g)(1), 1132(g)(2) and 1451(e) is also under consideration.[2] The parties have submitted memoranda, affidavits, and exhibits in support of their positions, all of which were received by October 11, 1984.

---

1. Further review of the facts can be found in this court's December 22, 1983 order.

2. This motion was originally brought on April 11, 1984. After oral argument on May 2, 1984, the court reserved decision on defendants' motion pending final disposition of the remaining claims in Niagara's complaint.

The court has carefully reviewed these materials, as well as the earlier record.

## II.

### A. Niagara's LMRA § 302 Claim

Niagara urges, pursuant to Fed.R.Civ.P. 56(f) and 54(b), that the court allow more discovery and reconsider Niagara's § 302 claim. It argues that *United Mine Workers v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), does not preclude judicial inquiry into the trustees' conduct under § 302 of the LMRA, 29 U.S.C. § 186, for the trustees did not act pursuant to a collective bargaining agreement when they reduced benefits, but did so unilaterally by amending Article VI of the Fund's Rules and Regulations. Niagara asserts that further discovery is necessary to test the actuarial advice received by the Fund, the reasonableness of the Fund's response to that advice, and the Fund's communications with the Internal Revenue Service (IRS). Niagara claims that this information is in the sole hands of the Fund and that the Fund willfully withheld discovery before the court's decision of August 8, 1984.

In addition, Niagara argues that even if no additional discovery is granted, issues of material fact remain as to the amount of unfunded liability caused by Niagara's withdrawal;[3] whether the size of that liability threatened the Fund's financial integrity; whether the Fund cancelled funded past service credits; and the extent of disclosures made to the IRS to obtain its approval of the March 4, 1981 amendment to Article VI, section 2 of the Rules and Regulations.

**3.** Niagara's actuary, Allan Lund, has submitted an affidavit calculating the unfunded liabilities at no more than $1 million.

**4.** The Standard Agreement provides that Niagara's contributions should be used "as determined by the Trustees of said Fund, to be applied to the eligible employees based on the amount of employer contributions." Section II. The Trust Agreement states that the trustees have "full authority to determine all questions of nature, amount and duration of benefits to be

The court has carefully considered the parties' submissions and finds that Niagara has not presented any new materials which warrant reconsideration of the August 8 Memorandum Opinion and Order or further discovery.

■ Niagara's belated attempt to distinguish *United Mine Workers v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), is unavailing, for the Standard Agreement and the Trust Agreement, which authorize the trustees to determine the amount of benefits, are contracts between a labor organization and an employer. These agreements govern Niagara's relationship with the Fund concerning past service credits and provide that the benefits paid by the Fund to Niagara's employees should be related to Niagara's contributions for those employees.[4] Evidence shows that Niagara believed these agreements granted the Fund the right to cancel unfunded past service credits upon Niagara's 1981 withdrawal. It is also undisputed that Niagara told its employees that following its withdrawal from the Fund, it would be responsible for all benefits of all active employees eligible to retire from Niagara. These facts, which are not in the Fund's sole possession, entitle the Fund to summary judgment under *United Mine Workers v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), and *Torimino v. United Food and Commercial Workers International Union-Industry Pension Fund*, 548 F.Supp. 1012 (E.D.Mo.1982), aff'd, 712 F.2d 882 (8th Cir.1983).[5]

■ *Robinson* and *Torimino* permit judicial inquiry into the actions of trustees primarily to prevent misallocation of Fund assets for criminal purposes. Section 302

provided based on what it is estimated the Fund can provide without undue depletion or excessive accumulation...." Article VI, Section 1.

**5.** Because these dispositive facts were available to Niagara at the time of the summary judgment motion, there is no need to allow further discovery. Moreover, the court finds that the Fund's actions in the period before the August 8, 1984 order did not constitute an abuse of the discovery process.

does not allow a court to subject the trustees' actions to a reasonableness requirement. Rather the trustees are held to a standard not to act arbitrarily or capriciously on questions of coverage or eligibility. Here, the trustees cancelled benefits as authorized by the Standard and Trust Agreements to avoid the dumping of unfunded liability. This court's review under § 302 is to determine whether it was arbitrary and capricious for the trustees to have acted on the basis of the Martin E. Segal Company's (the Segal Company) $3.3 million deficit calculation. This court's role is not to consider the merits of the independent actuarial calculation itself. Niagara has not shown that it should prevail on its motion for reconsideration.[6]

## B. Leave to Amend

Niagara seeks leave to amend its complaint to include several breach of contract claims if the court finds its § 301 claim, 29 U.S.C. § 185(a), was not properly pled.

Niagara first charges that the Fund failed to comply with an Internal Revenue Code provision, 26 U.S.C. § 412(c)(8), when it adopted the March 4, 1981 amendment to Article VI, § 2 of the Rules and Regulations.[7] This Code provision is identical to ERISA § 302(c)(8), 29 U.S.C. § 1082(c)(8). It provides in pertinent part:

> No amendment described in this paragraph which reduces the accrued benefits of any participant shall take effect unless the plan administrator files a notice with the Secretary [of Labor] notifying him of such amendment and the Secretary has approved such amendment or, within 90 days after the date on which such notice was filed, failed to disapprove such amendment. No amendment described in this subsection shall be approved by the Secretary [of Labor] unless he determines that such amendment is necessary because of a substantial business hardship (as determined under subsection (d)(2)) and that waiver under subsection (d)(1) is unavailable or inadequate.

Niagara claims that adherence to this provision is a necessary prerequisite to the Fund's maintaining its status as a tax qualified plan. Niagara contends that the Fund breached contractual obligations in the Standard Form Agreements and Declara-

---

**6.** The affidavit of Allan Lund does not create any factual issues warranting reconsideration. First, the timeliness of the affidavit is questionable. It was not submitted by Niagara until as late as September 26, 1984. However, the Segal Company's calculation was available to Niagara by January of 1983, the document upon which the affidavit was based was placed into evidence in October 1983, and summary judgment materials were submitted to the court on July 18, 1984. Second, while Lund does call the Segal Company's calculation "unreasonable", it appears from the record that he misunderstood the application of a Congressionally-authorized formula.

Niagara claims that material factual issues exist on the present record. Several of these questions concern the accuracy of the Segal Company's calculations and whether the unfunded liabilities threatened the Fund's financial integrity. These questions cannot be reviewed by the court under other than the limited inquiry allowed by *Robinson* and *Torimino*. The record shows that there is a reasonable actuarial basis for the action of the trustees. Moreover, concerning the Fund's financial integrity, the question is not whether the plan would go bankrupt upon Niagara's departure, but whether the trustees

had an actuarial basis to believe cancellation was necessary "to avoid the dumping of substantial unfunded liability." *Central Tool Co. v. International Association of Machinists National Pension Fund,* 523 F.Supp. 812 (D.D.C.1981). To the extent that cancellation is necessary to avoid such "dumping" it is presumptively reasonable. *Stewart v. National Shopmen Pension Fund,* 730 F.2d 1552, 1556 (D.D.C.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 127, 83 L.Ed.2d 68 (1984). In this case, the Segal Company recommended to the trustees that they cancel the unfunded past service credits to prevent the fund from becoming actuarially unbalanced. The last material fact issue claimed by Niagara relates to the IRS approval of the March 4, 1981 amendment to Article VI, § 2 of the Fund's Rules and Regulations; this bears on Niagara's ERISA claims. Even assuming that the ERISA claim can be raised under the LMRA, and the court previously held that it could not, the cancellation of unfunded past service credits was consistent with recent case law. *See, e.g., id.*

**7.** The amendment to Article VI, § 2 specifically authorizes the cancellation of past service credits of employees of withdrawing employers when certain circumstances are met.

tion of Trust by failing to comply with the Code's requirement for a qualified plan.

Secondly, Niagara argues that the Fund was contractually obligated not to reduce accrued benefits by amendment without complying with Article VI, § 4, of the Fund's Rules and Regulations.[8] The Fund's failure to comply with this provision is a breach of a contractual obligation owed to Niagara's employees, but Niagara asserts that it has standing to challenge it because the collective bargaining agreement requires it to reimburse its employees for loss of benefits.

■ While Niagara did refer to § 301 of the LMRA for jurisdictional purposes in one footnote of its previous papers, the court finds that the contract claims were not properly presented to it before. Fed.R. Civ.P. 15 authorizes a court to permit amendments even following dismissal of a complaint. *United Steel Workers v. Mesker Bros. Industries, Inc.* 457 F.2d 91 (8th Cir.1972). Such amendment is within the discretion of the court, however, and need not be granted where it would be futile.

**8.** Article VI, § 4 provides:
This Plan may be amended at any time by the Trustees consistent with the provisions of the Trust Agreement. However, no amendment may decrease the accrued benefit of any Participatnt [sic] except:
(a) as necessary to establish or maintain the qualification of the Plan or the Trust Fund under the Internal Revenue Code and to maintain compliance of the Plan with the requirements of ERISA, or
(b) if the amendment meets the requirements of Section 302(c)(8) of ERISA and Section 412(c)(8) of the Internal Revenue Code, and the Secretary of Labor has been notified of such amendements [sic] and has either approved of it or, within 90 days after the date on which such notice was filed, he failed to disapprove.

**9.** Article VI, § 6 provides in pertinent part:
Qualification. The Pension Plan adopted by the Trustees shall be such as will qualify for approval by the Internal Revenue Service, U.S. Treasury Department, and will continue as a qualified plan, *so as to insure that the employer contributions* to the Plan are proper deductions for income tax purposes. The Trustees are authorized to make whatever applications are necessary with the said Internal Revenue Service to receive and maintain approval of the Plan. (emphasis supplied)

*Forman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). *United Steel Workers v. Mesker Bros. Indus. Inc.,* 457 F.2d 91 (8th Cir.1972).

■ As part of its contract claim, Niagara asserts that defendants violated Article VI, § 6 of the Trust Agreement[9] and § IV of the Standard Agreement.[10] These provisions promise only to insure that employer "contributions" will be tax deductible. The record shows that Niagara made "contributions" to the plan only prior to January 31, 1981;[11] that after that date Niagara was no longer an employer within the meaning of the Trust Agreement, *see* Art. XII, § 1 of the Trust Agreement; and that the cancellation of past service credits—the conduct which is the alleged breach of the "contribution contract"—occurred after Niagara ceased making contributions and had withdrawn from the Fund. Niagara therefore lacks standing to sue the Fund for breach of a contractual obligation to maintain the tax deductibility of employer contributions, and it is no longer within the class protected by the promise.[12]

**10.** Section IV of the Standard Agreement provides:
It is understood and agreed that the Pension Plan referred to herein shall be such as will qualify for approval by the appropriate governmental agencies where applicable, *so as to allow* the employer an income tax deduction for the *contributions paid hereunder.* (emphasis added)

**11.** Niagara pays withdrawal liability to the Fund pursuant to the Multiemployer Pension Plan Amendments Act (MPPAA), but Article XIII, § 9(c) of the Trust Agreement expressly provides that "payments of withdrawal liability shall not be considered contributions."

**12.** Apart from the standing problem, Niagara's contract claim does not seem ripe for adjudication since the Fund is and has always been tax-qualified. The remedy for breach of the obligation to maintain tax-qualified status would be to compensate Niagara for any tax costs to it arising from the absence of qualification. It is undisputed that none of Niagara's deductions has been disallowed and that Niagara continues to take tax deductions for its withdrawal liability payments. Niagara relies on *Winger's Department Store, Inc. v. Comm. of Internal Revenue,* 82 T.C. 869 (1984), to assert that the IRS may later question the Fund's tax

■ Niagara must also overcome a standing problem to assert the second basis for its § 301 claim, that the Fund reduced accrued benefits without complying with Article VI, § 4, of the Fund's Rules and Regulations. Niagara was not a party to these Rules and Regulations which created rights and entitlements only for the participants and beneficiaries of the Fund, and not for contributing employers.

■ In addition to the standing problem, it is questionable whether there is any legal basis to this claim. The record suggests that the cancellation of unfunded past service credits was not based on the 1981 amendment. No contractual violation of Article VI, § 4 of the Rules and Regulations therefore occurred. Even assuming that the cancellation was pursuant to the 1981 amendment, the Fund's cancellation of unfunded past service credits does not constitute a prohibited reduction of "accrued benefits of any participants" within the meaning of ERISA and the Internal Revenue Code. *Stewart v. National Shopmen Pension Fund,* 730 F.2d 1552 (D.C. Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 127, 83 S.Ct. 68 (1984), establishes that ERISA § 203(a)(3), 29 U.S.C. § 1053(a)(3), authorizes cancellation of unfunded past service credits upon the withdrawal of an employer. Such cancellation is not a prohibited reduction in accrued benefits as Article VI, § 4 of the Rules and Regulations was intended to prevent. Because Niagara's proposed LMRA § 301 claim would be futile, its motion to amend is denied.[13]

### III.

■ The Fund seeks attorney's fees incurred in prevailing against Niagara's MPPAA and ERISA claims under three statutory provisions, 29 U.S.C. §§ 1132(g)(1), 1132(g)(2) and 1451. The first statute relied upon by the Fund, 29 U.S.C. § 1132(g)(1) provides:

> In any action under this title (other than an action described in paragraph 2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

Application of this statute is thus expressly limited to an action by a "participant, beneficiary, or fiduciary." Since the court in its Memorandum Opinion and Order dated December 22, 1983, specifically held that Niagara did not satisfy any of these labels, this attorney's fees section does not apply. *See M&R Investment Co., Inc. v. Fitzsimmons,* 685 F.2d 283 (9th Cir.1982).

■ The next statute upon which the Fund seeks to recover for prevailing on the ERISA claims, 29 U.S.C. § 1132(g)(2), provides in pertinent part:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant...

The Fund asserts that this section makes the award of attorney's fees mandatory in successful actions to collect withdrawal liability arrears. While the Fund concedes that it did not initially bring this action, it argues that Niagara admits that it asserted its MPPAA claims and moved for injunctive relief solely in an effort to beat the Fund to the courthouse. Consequently, the

---

status, disqualify it, and assess a retroactive tax deficiency against Niagara. That case, however, disallowed tax deductions taken by an employer for its contributions to the employer's own single employer pension plan because of blatant misuse of the plan. Niagara has not shown that there is much possibility that the IRS will disallow deductions taken in this situation, where hundreds of employers make contributions to the plan and the proceeds are being used properly.

**13.** In its responsive papers, the Fund seeks sanctions against Niagara for unnecessarily and vexatiously multiplying the proceedings. While Niagara has raised new arguments which could and should have been made earlier, the court recognizes that this is an area of developing law and finds that sanctions are not warranted.

policy of § 1132(g)(2) would be unjustifiably thwarted, the Fund asserts, if employers could forestall mandatory awards merely by bringing preemptive actions.

While the Fund's argument is appealing, the plain language of the statute is clear. Section 1132(g)(2) applies only when an action is brought by a fiduciary to collect unpaid contributions. The Fund has cited no authority to support its broad application of the statute. Accordingly, the court will not interpret the language of the statute expansively when the wording is unambiguous.

Finally, the Fund seeks to recover expenses incurred in defeating Niagara's MPPAA claims, including those incurred in successfully opposing Niagara's Fed.R. Civ.P. 54(b) motion,[14] pursuant to 29 U.S.C. § 1451(e). This section provides:

> In any action under this section, the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party.

The Fund asserts that it has completely prevailed against Niagara's MPPAA claims as evidenced by this court's Memorandum Opinion and Order of August 11, 1983 which denied Niagara's motion for a preliminary injunction; the Memorandum Opinion and Order of December 23, 1983 which granted summary judgment dismissing Niagara's MPPAA claims, and the Memorandum Opinion and Order of August 8, 1984 which dismissed Niagara's entire complaint. The Fund contends that by prevailing against Niagara's withdrawal liability claims, it obtained for the Fund and its beneficiaries the continued benefit of $1,476,200 and should be awarded its expenses in doing so. Moreover, the Fund argues that the court's discretion should be

exercised in its favor because it responded to Niagara's suit in the cheapest, most direct manner by foregoing a second parallel suit based on 29 U.S.C. § 1132(g)(2), even though an award of attorney's fees would have been mandatory under that section.

Niagara, on the other hand, argues that circumstances do not justify a discretionary award of attorney's fees. It contends that unlike the case of an individual participant or beneficiary, both Niagara and the Fund can bear the cost of defending their positions in court. Niagara also argues that its effort to seek arbitration had substantial merit, that courts have been wary of awarding attorney's fees to defendants, and that the Fund's actions did not result in any greater benefits to the plan.

▮▮▮▮▮ After carefully considering the parties' respective positions, the court believes that the Fund should be awarded attorney's fees for its expenses in defending the MPPAA claims, including the Fed. R.Civ.P. 54(b) expenses. While Niagara's effort to seek arbitration was not frivolous, the record shows that it was brought to preempt suit by the Fund under 29 U.S.C. § 1132(g)(2). An award of attorney's fees would have been mandatory under that section. *See Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir.1983). Moreover, § 1451 is neutral as to the award of attorney's fees to successful plaintiffs *or* defendants. The Fund has prevailed against Niagara's withdrawal liability claims and has thus secured some benefit for the Fund's beneficiaries. On this record it is appropriate to award the Fund reasonable fees for its work on this aspect of the case.[15]

## ORDER

Accordingly, based upon all the files, records, and proceedings herein,

---

14. Niagara brought this motion for final judgment on Counts I and III of the complaint following the court's order dated December 23, 1983, which dismissed the Fund's MPPAA claims. The motion was denied following oral argument on May 2, 1984.

15. In *Lawrence v. Westerhaus,* 749 F.2d 494 (8th Cir.1984), the Court of Appeals discussed factors

to be considered in awarding discretionary attorney's fees under 29 U.S.C. § 1132(g):

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys'

IT IS HEREBY ORDERED that

1. Plaintiff's motions for reconsideration of the Memorandum Opinion and Order herein dated August 8, 1984, for leave to amend, and for further discovery are denied.

2. Defendants' motion to recover attorney's fees incurred in prevailing against plaintiff's claims under the Employee Retirement Income Security Act of 1974, pursuant to 29 U.S.C. § 1132(g)(1) or (2), is denied.

3. Defendants' motion for attorney's fees under the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. § 1451(e) is granted. Defendants shall submit their fees application to the court and opposing counsel by January 14, 1985. This should include affidavits detailing the number of hours reasonably expended in prevailing on plaintiff's MPPAA claims, by whom the work was done, and what the reasonable hourly rate of each individual was at that time. Plaintiff will then have until January 28, 1985 to respond.

fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal qeustion [sic] regarding ERISA itself; and (5) the relative merits of the parties' positions.

It is not clear that these factors are applicable to a fees issue under MPPAA, 29 U.S.C. § 1451(e), but consideration of these factors also justifies a fees award.