**Joan LAWRENCE, Appellant,**

v.

**Carl L. WESTERHAUS, et al., Appellees.**

**No. 85–1509.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 27, 1985.

Decided Dec. 18, 1985.

As Amended on Denial of Rehearing Feb. 3, 1986.

Raymond Howard, St. Louis, Mo., for appellant.

Robert Stewart, St. Louis, Mo., for appellees.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Joan Lawrence appeals the district court's [1], 606 F.Supp. 275, grant of summary judgment in favor of defendants, the Board of Administration of the Lincoln St. Louis Pension Fund. She brought this action under section 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132 (1982), to obtain

1. The Honorable John F. Nangle, Chief Judge, United States District Court for the Eastern District of Missouri.

judicial review of the Board's denial of disability benefits under the Lincoln St. Louis Pension Plan. For reversal, Lawrence argues that the district court erred because a genuine issue of material fact existed. She argues that the Board's decision was arbitrary and capricious because 1) it was based on insufficient evidence; 2) the Board members were prejudiced against her; and 3) her hearing before the Board was fundamentally unfair because it was held in the office of the Board's attorney, and he participated in it. We affirm.

Joan Lawrence is a 43-year-old black woman. She was a parts inspector for Lincoln St. Louis from April 25, 1966, until June 23, 1976 (10.166 years). In 1972 or 1973 she began having mental problems, but she continued working most of the time until 1976. In February 1976 she was admitted to Malcolm Bliss Mental Health Center and diagnosed as manic depressive. Symptoms of her illness included delusions, hearing voices, suddenly going on long trips for no apparent reason, being abusive to her family and others, and other bizarre behavior. She remained hospitalized for about a month, but then returned to work. She was discharged from Lincoln St. Louis on June 23, 1976, for being away from work for three days without calling in. She was hospitalized at Malcolm Bliss two more times, from June 29, 1976, to August 20, 1976, and from December 20, 1976, to January 3, 1977. Since that time she has been on medication and has continued to be treated as an outpatient.

On July 25, 1977, Lawrence was granted Social Security disability benefits. The ALJ determined that her disability began on April 1, 1976. He stated that there was some possibility of improvement and that she should be re-evaluated in a few years. Lawrence took this Social Security decision to defendant Westerhaus, who was director of personnel at Lincoln St. Louis as well as a member of the Board. She apparently thought that the ALJ's decision would enable her to get a disability pension from Lincoln St. Louis. She was denied benefits, however, because the terms of the Plan require the recipient to be "perma-nently and totally disabled." The Plan, Art. 5, Sec. 3(a). The only evidence she had provided, the Social Security decision, indicated that she might get better. In 1983, the Social Security Administration determined that Lawrence was no longer disabled and terminated her benefits and she is appealing that decision.

After the Board notified Lawrence in 1977 that she was not eligible for a disability pension, she submitted a formal application to the Board. In June 1978 the Board sent her another letter denying her claim. She then filed suit in district court, which remanded her case to the Board to consider evidence that Lawrence tried to present in court but had never presented to the Board.

After the remand, both Lawrence and her doctor at Malcolm Bliss, Dr. Michael Bieri, were deposed. The Board held a hearing in April 1984 at which Lawrence, her mother and a neighbor testified about her odd behavior and mental problems. The Board issued a decision on June 13, 1984, denying benefits on three grounds: 1) Lawrence did not follow the procedure set forth in the Plan for appealing adverse decisions by the Board; 2) she had not worked the ten years required to get a pension; and 3) she had not shown by medical evidence that she was "wholly and permanently prevented from engaging in any occupation or employment * * * during the remainder of [her] life," as required by Art. 5, Sec. 3(b) of the Plan.

▇ Claimants for benefits under private pension plans may obtain judicial review of denials of their claims under section 502 of ERISA. Federal courts may overturn a decision of private pension fund fiduciaries only if the decision is arbitrary, capricious or an abuse of discretion. *Short v. Central States, Southeast & Southwest Areas Pension Fund,* 729 F.2d 567, 571 (8th Cir. 1984); *Bueneman v. Central States, Southeast & Southwest Areas Pension Fund,* 572 F.2d 1208, 1209 (8th Cir.1978). If there is evidence supporting the decision, it is not arbitrary, capricious or an abuse of

discretion. *Torimino v. United Food & Commercial Workers International Union Industry Pension Fund,* 548 F.Supp. 1012, 1014 (E.D.Mo.1982), *aff'd,* 712 F.2d 882 (8th Cir.1983) (per curiam).

The district court granted summary judgment to defendants. Summary judgment is appropriate only if there is "no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). It should be used "only when, viewing the facts and inferences that may be derived therefrom in the light most favorable to the nonmoving party, the court is convinced that there is no evidence to sustain a recovery under any circumstances." *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983). Because "courts are hesitant to interfere with the administration of a pension plan," *Bueneman,* 572 F.2d at 1209, the district court had to determine only whether there was any genuine factual conflict on the question of the arbitrary or capricious nature of the Board's decision.

■ In this case there is substantial evidence supporting the Board's decision. The terms of the pension plan state that the Board should not authorize disability payments unless it "is possessed of indisputable and impartial medical evidence attesting to the individual's total and permanent disability." The Plan, Sec. 4(d)(ii). Lawrence did not present the Board with such evidence. Lawrence's evidence of her disability consisted of 1) her medical records, many of which were from Malcolm Bliss at the time of her hospitalizations in 1976; 2) a March 30, 1983 letter from her psychiatrist, Dr. Bieri, stating that she was unemployable "due to her eccentric appearance, rather poor hygiene and loud, unmodulated voice plus moderate but chronic degree of grandiosity;" and 3) lay testimony from her mother and her neighbor about her strange behavior. She presented

no medical evidence showing the *permanence* of her disability, and in his deposition Dr. Bieri said, "I don't think I ever felt she shouldn't return to work for the remainder of her life." He testified that he wrote the 1983 letter in response to the question whether she would be capable of holding a full-time job within the next year. There was evidence from Dr. Bieri and other doctors that her illness was episodic, and that when it was in remission, Lawrence's behavior and appearance were fairly normal.

The standards of eligibility for this Plan are strict and the Board's decision cannot be called arbitrary or capricious. Much of the evidence supported its position, and Lawrence simply failed to allege any facts that would contradict the evidence that her disability was not permanent. She argues on appeal that the Board did not refute her evidence of disability. This is true, but misses the point that the important issue under the terms of the Plan is the permanence of her inability to work.

In *Torimino, supra,* a private pension plan had a similar "total and permanent disability" requirement. In that case there was conflicting evidence; some medical evidence and testimony of a vocational expert showed that the claimant was totally and permanently disabled. Other medical evidence, however, indicated that although Torimino's physical problems were serious, he was not totally unable to do any work for the rest of his life. 548 F.Supp. at 1013. The district court reluctantly held that the trustee's decision could not be overturned; because there was some evidence to support it, it could not be called arbitrary, capricious, or an abuse of discretion. *Id.* at 1014. This court affirmed the district court's judgment. 712 F.2d at 882.

The Board denied appellant her pension on two other bases: first, that she did not exhaust her internal remedies by appealing to the board,[2] and second, that she did not

---

**2.** Section 4(b)(i) of the Plan requires persons whose claims have been denied to "address a written communication to one of the Company appointed members of the Board and one of the

Union appointed members of the Board, setting forth the basis for his claim." Appellant did not do precisely this, but after her claim was first denied in 1977 she sent a formal application for

have ten years service with Lincoln St. Louis.[3] There may be unresolved issues of fact on both of these points, but even if both were resolved in her favor it would not affect the Board's ultimate decision. Therefore, they are not issues of material fact. The district court noted the conflict over the length of her service and specifically did not base its opinion on that ground.

■ Lawrence also argues that the decision was arbitrary and capricious because the circumstances of the hearing and decision were fundamentally unfair. She alleges that defendant Westerhaus was biased against her, but the only fact she alleges in support of the claim is that he had previously decided against giving her benefits. She alleges, and her affidavit recites, that the Board was prejudiced against her because she is black and female, but her only factual support is that all four members were white middle-aged males. They submitted affidavits stating that they did not consider her race and sex in their decision, and she did not respond with any facts to contradict their affidavits. She alleges that she was prejudiced by the situs of the hearing at the office of defendants' attorney and by his presence at the hearing. Defendants submitted evidence that appellant did not accept their offer to hold the hearing in a neutral hotel room. The transcript of the hearing indicates that Lawrence's attorney was not intimidated by the circumstances and zealously argued on her behalf. The Board's attorney did not say very much at the hearing, although he did interject questions several times to clarify the testimony. He submitted an affidavit saying that he gave no legal advice during the hearing and that the Board deliberated on appellant's claim elsewhere, when he was not

present. Other than her affidavit, appellant did not offer other evidence to counter the Board's version. Her contentions and affidavit do not raise a material issue of fact as to the arbitrary or capricious nature of the Board's decision.

We affirm judgment of the district court.

---

the pension to the Board. If the Board had denied her benefits *solely* on this procedural basis, it could be considered an abuse of discretion, but they went on to deny the benefits on the merits.

**3.** In letters written soon after her termination and in his statement at the beginning of the hearing, defendant Westerhaus said that Lawrence had been employed for ten years and two

months. However, the Social Security Administration found her to be disabled as of April 1, 1976, and at the hearing her lawyer said that April 1 was the date from which she requested benefits. In its decision, the Board said that if she became permanently and totally disabled in April 1976, then she must have worked only 9.93 years for the company.