800 F.2d 742
 123 L.R.R.M. (BNA) 3042, 105 Lab.Cas. P 12,032,
7 Employee Benefits Ca 2313
 NIAGARA OF WISCONSIN PAPER CORPORATION, Appellant,
v.
The PAPER INDUSTRY UNION-MANAGEMENT PENSION FUND; Wayne E.
Glenn, Joe J. Bradshaw, James Dassaro, John E. Price, Irving
Rolnick, Robert Sherry, Arnold Nemiro and M.L. Talmadge,
Trustees of The Paper Industry Union Management Pension
Fund, Appellees.
 No. 85-5231.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 10, 1986.
Decided Sept. 3, 1986.
Rehearing Denied Nov. 4, 1986.
 
 Stuart T. Williams, Minneapolis, Minn., for appellant.
 Michael J. Dell, New York City, for appellees.
 Before LAY, Chief Judge, and ROSS and WOLLMAN, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 Niagara of Wisconsin Paper Corporation (Niagara) brought this action under the Labor-Management Relations Act (LMRA), 29 U.S.C. Secs. 141-187 (1982) for damages and injunctive relief against The Paper Industry Union-Management Pension Fund and its trustees (Fund or trustees), alleging that the Fund arbitrarily and capriciously cancelled past service credits of Niagara's employees upon Niagara's withdrawal from the Fund. The district court[1] granted the Fund's motion for summary judgment and dismissed Niagara's complaint. Niagara of Wisconsin Paper Corp. v. The Paper Industry Union-Management Fund, 603 F.Supp. 1420, 1422-23 (D.Minn.1984) (August Order). In addition, the district court subsequently denied Niagara's motions for reconsideration, for further discovery and for leave to amend its complaint. Niagara of Wisconsin Paper Corp. v. The Paper Industry Union-Management Fund, 603 F.Supp. 1423, 1431 (D.Minn.1984) (December Order). Niagara appeals from portions of these adverse rulings and for the reasons discussed below, we now affirm.
 
 I. FACTS
 
 2
 The Fund is a large, multi-employer pension fund governed by section 302(c)(5) of the LMRA, 29 U.S.C. Sec. 186(c)(5), and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Secs. 1001-1368 (1976), as amended by the Multi-Employer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. Secs. 1381-1461 (1982). The Fund operates as a trust, providing pension and other benefits to employees covered under collective bargaining agreements negotiated by various affiliates of the United Paper Workers International Union. Niagara is a manufacturer of paper products and from 1973 through January 31, 1981 Niagara made contributions to the Fund on behalf of its eligible employees. Effective January 31, 1981 Niagara withdrew from the Fund and established its own pension plan for the benefit of its employees. Pursuant to a collective bargaining agreement with its employees entered into at the time, Niagara agreed to make up any benefits or credits cancelled or denied by the Fund due to Niagara's withdrawal from the Fund.
 
 
 3
 To counteract the effect of Niagara's withdrawal from the plan the Fund took the following two steps to safeguard the solvency of the plan. First, in August, 1981 the Fund imposed withdrawal liability upon Niagara under section 1381 of MPPAA. The Fund determined that Niagara's share of the plan's unfunded vested benefits was approximately $1.5 million. Second, in April, 1982 the Fund cancelled certain unfunded past service credits[2] of Niagara employees who were not on pension by April 1, 1982, based upon the advice of its actuaries, the Martin E. Segal Company (Segal). Segal had calculated that the pension benefits to Niagara participants were valued at $6.6 million and that Niagara's total contributions, including the $1.5 million withdrawal liability equalled only $3.3 million, resulting in a substantial shortfall to the Fund. Segal advised the Fund that the actuarial balance of the Fund was in jeopardy unless the Fund cancelled the past service credits.
 
 
 4
 From October, 1981 through April, 1983 Niagara made its required monthly withdrawal liability payments to the Fund. Niagara stopped making its payments in May, 1983 and in June, 1983 Niagara filed this suit and a motion for a preliminary injunction. Niagara alleged that the Fund arbitrarily and capriciously cancelled past service credits of Niagara's employees, refused to participate in arbitration demanded by Niagara and caused Niagara to pay monies in excess of its properly calculated withdrawal liability. Niagara asserted claims under both ERISA and the LMRA. Niagara's request for a preliminary injunction was denied. The Fund filed a motion to dismiss the complaint, or alternatively, for summary judgment.
 
 
 5
 On December 23, 1983 the district court entered a memorandum and order granting the Fund's motion to dismiss Niagara's claim to compel arbitration as untimely and to dismiss Niagara's claims under ERISA for lack of subject matter jurisdiction. However the district court denied the Fund's motion to dismiss Niagara's claims under the LMRA holding that there was jurisdiction to hear Niagara's challenge to the Fund's cancellation of past service credits.[3]
 
 
 6
 The remaining LMRA claims proceeded before the district court on the cross motions by Niagara and the Fund for summary judgment. Following oral argument and the submission of written memoranda the district court granted the Fund's motion for summary judgment, holding that the trustees' actions were not arbitrary and capricious and that Niagara failed to establish a violation of Sec. 302(c)(5) of the LMRA.[4] August Order, supra, 603 F.Supp. at 1422.
 
 
 7
 Thereafter Niagara filed motions to reconsider, for further discovery, and for leave to amend the complaint to plead breach of contract claims under Sec. 301(a) of the LMRA, 29 U.S.C. Sec. 185(a)[5]. The district court denied these motions, December Order, supra, 603 F.Supp. at 1431, and Niagara appealed after the entry of a final judgment in June, 1985.
 
 
 8
 Since Niagara does not appeal the dismissal of its request to compel arbitration, the initial withdrawal liability calculation, or the dismissal of its ERISA claims, the sole focus of this appeal is the dismissal of Niagara's LMRA claims challenging the Fund's cancellation of the past service credits. For reversal, Niagara specifically argues that: 1) the district court erred in denying partial summary judgment to Niagara and in granting summary judgment to the Fund on Niagara's Sec. 302(c)(5) claim; and 2) the district court abused its discretion in denying Niagara's motion for leave to amend its complaint after dismissal of its complaint to add claims under section 301(a).
 
 II. DISCUSSION
 A. Section 302(c)(5)
 1. Standard of Review
 
 9
 Niagara brought this action challenging the Fund's action under section 302(c)(5) of the LMRA. Section 302(c)(5) allows payments to pension and similar trust funds only if they are for the "sole and exclusive benefit" of employees. This court has jurisdiction under section 302(e)[6] to restrain violations of subsection (c)(5). Arroyo v. United States, 359 U.S. 419, 426-27, 79 S.Ct. 864, 868-69, 3 L.Ed.2d 915 (1959). Section 302(c)(5) has been construed to impose on trustees the burden of fiduciary care, as defined under traditional trust law principles. NLRB v. Amax Coal Co., 453 U.S. 322, 330, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981). Each trustee bears an "unwavering duty of complete loyalty" to employees, id. at 329, 101 S.Ct. at 2794, and this duty "to trust beneficiaries must overcome any loyalty to the interest of the party that appointed him," id. at 334, 101 S.Ct. at 2796. It is well settled in this circuit that federal courts may overturn a decision of private pension fund fiduciaries only if the decision is arbitrary, capricious or an abuse of discretion.[7] Severs v. Allied Construction Services, Inc., Employees' Profit Sharing and Stock Ownership Plan, 795 F.2d 649, 650-51 (8th Cir.1986); Lawrence v. Westerhaus, 780 F.2d 1321, 1322 (8th Cir.1985); Central Hardware Co. v. Central States, Southeast and Southwest Areas Pension Fund, 770 F.2d 106, 109 (8th Cir.1985), cert. denied, --- U.S. ---, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986); Geigle v. Flacke, 768 F.2d 259, 262 (8th Cir.1985); Short v. Central States, Southeast & Southwest Areas Pension Fund, 729 F.2d 567, 571 (8th Cir.1984); and Bueneman v. Central States, Southeast and Southwest Areas Pension Fund, 572 F.2d 1208, 1209 (8th Cir.1978). If there is evidence supporting the decision, it is not arbitrary, capricious or an abuse of discretion. Severs, supra, 795 F.2d at 651; Lawrence, supra, 780 F.2d at 1322-23; Torimino v. United Food and Commercial Workers International Union Industry Pension Fund, 548 F.Supp. 1012, 1014 (E.D.Mo.1982), aff'd, 712 F.2d 882-83 (8th Cir.1983) (per curiam).
 
 
 10
 The district court granted summary judgment to the Fund because Niagara did not establish a violation of section 302(c)(5). Summary judgment is appropriate only if there is "no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). Further, as was recently held by the Supreme Court, the inquiry involved in a ruling on a motion for summary judgment necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. Anderson v. Liberty Lobby, Inc., --- U.S. ---, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, like the district court, we need only determine whether there was any genuine factual conflict on the question of the arbitrary and capricious nature of the Fund's action. Severs, supra, 795 F.2d at 651; Lawrence, supra, 780 F.2d at 1323.
 
 2. Merits
 
 11
 We understand Niagara's attack on the district court's entry of summary judgment for the Fund to be twofold.[8] First, Niagara takes the position that it was entitled to partial summary judgment because it established that the trustees violated a fiduciary duty imposed by section 302(c)(5) when they cancelled the past service credits. Secondly, Niagara maintains that the entry of summary judgment was not proper because there existed disputed issues of material fact concerning the actuaries' calculation and advice regarding the unfunded liability caused by Niagara's withdrawal.[9]
 
 
 12
 a. Breach of Fiduciary Duty
 
 
 13
 Niagara argues that the trustees breached their fiduciary duty to act only in accordance with the terms of the pension plan when they cancelled the past service credits. Niagara contends that the Fund acquired the authority to cancel the past service credits by amending the plan's Rules and Regulations in 1981 after Niagara's withdrawal and that the amendment was adopted in violation of another plan provision requiring compliance with an ERISA requirement.
 
 
 14
 The Fund responds that there was no violation of section 302(c)(5) because the cancellation of past service credits was authorized by provisions in the Standard Form Agreement (Standard Agreement) and the Declaration of Trust Agreement (Trust Agreement) which Niagara signed. The Fund takes the position that the 1981 amendment was added to incorporate MPPAA and in doing so to confirm and reiterate the Fund's longstanding policy and practice of cancelling past service credits which the Fund claims Niagara was aware of.[10]
 
 
 15
 The district court agreed with the Fund. It held that there was authority for the trustees' cancellation of the past service credits in the Standard and Trust Agreements. December Order, supra, 603 F.Supp. at 1426-27. We agree.
 
 
 16
 If the 1981 plan amendment Niagara is relying on was the only provision relevant to the powers and duties of the trustees, we might be inclined to agree with Niagara. Our review of the Standard and Trust Agreements, however, reveals a number of provisions highly supportive of the trustees' authority to take the steps they took to protect the plan following Niagara's withdrawal, apart from the plan amendment.
 
 
 17
 The Standard Agreement provides that Niagara's contributions shall be used "to provide retirement benefits for eligible employees in accordance with the Pension Plan of said Fund, as determined by the Trustees of said Fund, to be applied to the eligible employees based on the amount of employer contribution." Section II. Section III of the Standard Agreement states that Niagara "agrees to be bound by all terms and provisions" of the Agreement and Declaration of Trust.
 
 
 18
 In addition to the Standard Agreement, the Trust Agreement contains several pertinent provisions regarding the powers and duties of the trustees. Section 3 of Article IV states in part that the trustees are empowered "[t]o do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of property held hereunder" and "[t]o do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objective of enabling the employees to obtain pension benefits in the most efficient and economical manner." Further, section 1 of Article VI gives the trustees "full authority to determine all questions of nature, amount and duration of benefits to be provided based on what it is estimated the Fund can provide without undue depletion * * *."
 
 
 19
 We agree with the contention of the Fund that these provisions in the Standard and Trust Agreements gave the trustees the general authority to cancel the past service credits if done to effectuate the purposes of the Fund. In an effort to carry out their obligation to protect the trust fund and assure a continuation of funded benefits to other plan members, the trustees decided to follow the advice of their actuaries and cancel the unfunded past service credits to the extent necessary to preserve the financial integrity of the Fund.[11] The trustees' determination that they have the authority to so act is not only supportable by a construction of the foregoing provisions but is entitled to significant weight. See Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 105 S.Ct. 2833, 2839, 86 L.Ed.2d 447 (1985); Central Hardware, supra, 770 F.2d at 110. As provided in section 2 of Article IV in the Trust Agreement in this case the trustees have the power to construe the provisions of the Trust Agreement and "any construction adopted by the Trustees in good faith shall be binding upon * * * the Employers [Niagara]." There is no evidence that the trustees have acted other than in utmost good faith.
 
 
 20
 In light of the fact that the trustees' actions were authorized under the Standard and Trust Agreements by which Niagara was expressly bound, Niagara's argument based upon the 1981 plan amendment is unpersuasive. We are not convinced by Niagara's argument for the additional reason that Niagara is really attempting to bring in an ERISA claim and argument over which the district court held that it had no jurisdiction, a ruling from which Niagara did not appeal. We conclude, as did the district court, that Niagara did not make a sufficient showing that the trustees breached any fiduciary duty under section 302(c)(5) to warrant the entry of summary judgment in its favor.
 
 
 21
 b. Issues of Material Fact
 
 
 22
 Niagara next argues that the district court erred in granting summary judgment to the Fund because genuine issues of material fact remain concerning the accuracy of Segal's calculations, whether the unfunded liabilities threatened the Fund's financial integrity, and related issues.[12] Niagara claims that material factual issues exist on the present record and that the affidavit of Niagara's actuary, Allen Lund, which was filed with Niagara's motion for reconsideration, creates factual issues warranting a trial.
 
 
 23
 We disagree. This court's review under section 302 is limited. We must determine whether there is any genuine factual conflict on the question of the arbitrary and capricious nature of the actions of the Fund. See ante at p. 746. In this context that means we must consider whether it was arbitrary and capricious for the trustees to have acted on the basis of Segal's calculations. There may be unresolved issues of fact concerning the figures in the actuarial calculation itself, but even if they were resolved in Niagara's favor, it would not affect the trustees' ultimate decision. Therefore, they are not issues of material fact. See, e.g., Lawrence, supra, 780 F.2d at 1324.
 
 
 24
 Quite simply, Niagara's contentions and the Lund affidavit do not raise a material issue of fact as to the arbitrary and capricious nature of the trustees' decision. Further, on the issue of the arbitrary or capricious nature of the trustees' action, there is evidence in the record to support their decision. See Lawrence, supra, 780 F.2d at 1323. It is undisputed that the eight years of Niagara's contributions did not fund all of the past service credits. It is also undisputed that Niagara anticipated the possibility of the cancellation of unfunded benefits when it withdrew and separately contracted with its employees to provide any benefits that were cancelled by the Fund following Niagara's withdrawal. Further, it is not disputed that the trustees acted reasonably in seeking the advice of its actuary, Segal, and that Segal recommended to the trustees that they cancel the unfunded past service credits to prevent the Fund from being actuarially unbalanced. Thus, the trustee had a reasonable actuarial basis to believe cancellation was necessary to avoid the dumping of substantial unfunded liability, and to the extent that cancellation is necessary to avoid such dumping, it is presumptively reasonable. Stewart v. National Shopmen Pension Fund, 730 F.2d 1552, 1566 (D.C.Cir.), cert. denied, 469 U.S. 834, 105 S.Ct. 127, 83 L.Ed.2d 68 (1984).
 
 B. Leave to Amend
 
 25
 Lastly, Niagara argues that the district court erred in denying leave to amend for the purpose of adding a section 301(a) of LMRA (breach of contract) claim. After the district court granted summary judgment to the Fund, Niagara filed a motion to reconsider and a motion for leave to amend the claim. The essence of Niagara's section 301(a) claim, as argued on appeal, is that the 1981 amendment constituted a breach of contract, namely the plan's Rules and Regulations. The district court denied leave stating that the amended claim would be futile because Niagara lacked standing in that it was not a party to the Rules and Regulations and because the legal basis for the claims was "questionable". December Order, supra, 603 F.Supp. at 1429. For reversal Niagara contends that FED.R.CIV.P. 15(a) provides that leave to amend "shall be freely given when justice so requires," and that the merits of a claim may not serve as a basis for denying leave to amend unless the claim is clearly frivolous.
 
 
 26
 The district court's denial of Niagara's motion for leave to amend was proper. Niagara did not file its motion until after the district court ruled on the summary judgment and dismissed Niagara's complaint. Although a pretrial motion for leave to amend one's complaint is to be liberally granted, different considerations apply to motions filed after dismissal. Dorn v. State Bank of Stella, 767 F.2d 442, 443 (8th Cir.1985). After a complaint is dismissed, the right to amend under FED.R.CIV.P. 15(a) terminates, but a party like Niagara may still file a motion for leave to amend. Id.
 
 
 27
 The decision as to whether to grant leave to amend is entrusted to the sound discretion of the district court, and the exercise of that discretion will be reversed only when it has been abused. Holloway v. Dobbs, 715 F.2d 390, 392 (8th Cir.1983). We have carefully considered Niagara's arguments in support of its motion and conclude that the district court was justified in denying leave to amend because Niagara's complaint, as amended, would have been futile. Its argument based upon section 301(a) is a variation of its argument based upon section 302(c)(5) and is equally unpersuasive. Accordingly, we find no abuse of discretion in denying leave to amend.
 
 III. CONCLUSION
 
 28
 Accordingly, because Niagara did not establish its entitlement to partial summary judgment on its section 302(c)(5) claim as a matter of law, or raise any genuine issue of material fact on the question of whether the trustees acted in an arbitrary or capricious manner, or demonstrate that the district court abused its discretion in denying leave to amend its complaint after dismissal, we affirm the judgment of the district court.
 
 
 
 [1]
 Honorable Diana E. Murphy, United States District Judge for the District of Minnesota
 
 
 [2]
 The Fund distinguishes between two types of credits accruing to plan participants: past service credits and future service credits. Past service credits are credits based on service prior to the time when the participant's employer commences contributions to a plan, and future service credits are credits based on service after the employer starts making such contributions. Future service credits were not affected by the Fund's action, nor were the pensions of all Niagara employees who were on pension by April 1, 1982. Further, the Fund continued to count past service for vesting purposes, though not for purposes of determining the amount of benefits due
 
 
 [3]
 Neither party has appealed from the December 23, 1983 district court order
 
 
 [4]
 Section 302(c) of the LMRA provides in relevant part:
 The provisions of this section [forbidding transfers between employer and representatives of employees] shall not be applicable * * * (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon * * *; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pension or annuities * * *. 29 U.S.C. Sec. 186(c).
 
 
 [5]
 Section 301(a) of the LMRA provides:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. Sec. 185(a).
 
 
 [6]
 Section 302(e) provides:
 The district courts of the United States and the United States courts of the Territories and possessions shall have jurisdiction, for cause shown, and subject to the provisions of section 381 of Title 28 (relating to notice to opposite party) to restrain violations of this section, without regard to the provisions of section 17 of Title 15 and section 52 of this title, and the provisions of chapter 6 of this title. 29 U.S.C. Sec. 186(e).
 
 
 [7]
 In the United Mine Workers Health & Retirement Funds v. Robinson, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), the Supreme Court held that federal courts may not review for reasonableness under section 302(c)(5) the provisions of a collective-bargaining agreement allocating health benefits among potential beneficiaries of an employee benefit trust fund. Id. at 570, 102 S.Ct. at 1231. However, we agree with the other circuits that have held that Robinson is limited to cases in which eligibility and coverage requirements are established by collective bargaining and that cases involving situations where trustees maintain independent rulemaking power on questions of eligibility and coverage, like this one, are subject to an arbitrary and capricious standard of review. See, e.g., Murn v. United Mine Workers of America 1950 Pension Trust, 718 F.2d 359, 361 (10th Cir.1983); Sellers v. O'Connell, 701 F.2d 575, 577 (6th Cir.1983); see also Stewart v. National Shopmen Pension Fund, 795 F.2d 649, 651 (D.C.Cir.1986). The district court's reliance on Robinson was therefore misplaced, but not grounds for reversal in light of its alternate, express holding that the trustees did not act arbitrarily or capriciously
 
 
 [8]
 Our comprehension of the merits of Niagara's arguments has been made more difficult by Niagara's shift in focus during the course of these proceedings and its persistence in trying to inject claims under ERISA, when it did not appeal from the district court's 1983 order dismissing its ERISA claims
 
 
 [9]
 Although this argument surfaced in Niagara's motion for reconsideration of its section 302(c)(5) claim, for purposes of this opinion it will be considered in our discussion on the merits of the section 302(c)(5) claim
 
 
 [10]
 In 1977 when Niagara withdrew its nonunion employees from the Fund, Niagara paid the Fund additional money to prevent the cancellation of certain unfunded benefits
 
 
 [11]
 The trustees' concern for assuring the financial integrity of the pension plan has been deemed a "proper and weighty" concern by the Supreme Court. Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc., 105 S.Ct. 2833, 2842, 86 L.Ed.2d 447 (1985)
 
 
 [12]
 In a related argument Niagara contends the district court abused its discretion in granting summary judgment because the Fund allegedly withheld discovery of facts pertinent to the summary judgment decision. The district court expressly held that the dispositive facts were available to Niagara at the time of the summary judgment motion, that no further discovery was needed, and that the Fund's actions did not constitute an abuse of the discovery process. December Order, supra, 603 F.Supp. at 1426 n. 5. These findings are not clearly erroneous and the district court did not abuse its discretion by granting summary judgment to the Fund