**Iver OIEN, Plaintiff,**

v.

**CO–OP RETIREMENT COMMITTEE as Administrator of Co–Op Retirement Plan, Defendant.**

**No. Civ 88–4027.**

United States District Court, D. South Dakota, S.D.

Jan. 5, 1989.

**918**

Douglas P. Cummings, Jr., Sioux Falls, S.D., for plaintiff.

Alson R. Martin, David J. Waxse, Barbara A. Harmon, Overland Park, Kan., Barbara Anderson Lewis, Sioux Falls, S.D., for defendant.

## MEMORANDUM OPINION AND ORDER

JOHN B. JONES, District Judge.

Plaintiff, Iver Oien, brings this action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. He seeks judicial review of the defendant's, the plan's administrator, decision denying him disability benefits. Plaintiff was a participant in Farmland's Employee Retirement Plan, now known as the Co–Op Retirement Plan (Plan). The Co–Op Retirement Committee is the administrator of the plan.

Before the Court for resolution are the parties' cross motions for summary judgment. The parties agree that summary judgment is appropriate in this type of action because there is no right to *de novo* review of the decision. The plaintiff has adopted the defendant's statement of uncontroverted facts. Oral arguments were heard by this Court on November 7, 1988.

## FACTS

Plaintiff worked at the Baltic Farmers Elevator at Baltic, South Dakota for over eighteen years. (Exhibit 20 and 10, but see exhibit 8 "Confidential Employer's Report"). Plaintiff's last day of work was August 16, 1985. (Exhibit 1). On August 26, 1985 he filed for disability benefits. *Id.* Plaintiff claimed to be disabled due to postpolio syndrome. *Id.* He submitted to the committee a claim form, an attending physician's statement from Dr. Tom Burkhart, a medical report from Dr. Burkhart, an x-ray report from Dr. A.I. Soye, and a CAT scan report from Dr. R.L. Read. (Exhibits 3–6).

In the attending physician's statement, Dr. Burkhart found plaintiff to be totally disabled from any type of work and he did not expect plaintiff's condition to fundamentally or markedly change in the future. (Exhibit 3).

These reports were sent by the committee to Dr. Janet Vandiver (now Elliot) pursuant to Section 5.3(d) of the plan. The committee requested her medical opinion on whether or not plaintiff was wholly prevented from engaging in any occupation for wage or profit, and if so, whether or not plaintiff would remain totally disabled continuously and permanently. (Exhibit 8).

Dr. Vandiver (Elliot) reported to the committee that she could not make a decision on plaintiff's permanent and/or partial disability status based on the reports. (Exhibit 9).

In response to Dr. Vandiver's (Elliot) letter, Gregory N. Runyan called plaintiff and informed him that additional medical information was needed. (Exhibit 9 notation). Plaintiff then sent to the committee three reports from Dr. Jessie Easton, an x-ray report from Dr. L.J. Larson, and a functional capacities assessment report from tests conducted at McKennan Hospital. (Exhibits 10–14).

Dr. Easton's report dated August 9, 1985 noted that plaintiff was complaining of fatigue and pain. (Exhibit 10) Further it set forth plaintiff's medical history and the findings of her examination. *Id.* Dr. Easton recommended that plaintiff be given a lumbar support and some type of neck support and that he be placed on Benadryl. *Id.*

Dr Easton's report dated September 16, 1985 indicated that Benadryl did not help plaintiff's condition. (Exhibit 10 p. 5). Plaintiff complained to Dr. Easton of pain in his right leg. *Id.* The pain was located in his right knee which seemed to be aggravated by walking. *Id.* Plaintiff requested to be fitted with an ankle-foot brace. *Id.* Dr. Easton noted that "[t]he only muscle he has operating in the foot with any affect seems to be a combination of posterior and

anterior tib both of which act as invertors and pull the ankle into inversion as he walks." *Id.* Dr. Easton also suggested that he try using a cane. *Id.*

Dr. Easton's final report of October 11, 1985 provided that plaintiff was wearing the ankle brace and it was helping him with walking. (Exhibit 10 p. 6). Further it is reported that plaintiff is wearing a back brace but he continues to have pain on lateral bend to the left, and he has some tenderness in his back. *Id.*

Dr. Easton noted that his face was still flushed with the rash, but it did not appear as marked as it was on his first visit. *Id.* She reported he was still quite upset by the rapid deterioration of his muscle strength but that he feels better since he quit working even though he is still quite limited in what he is able to do in terms of lifting, bending and walking. *Id.* Further, plaintiff indicated to her that "he is learning to do a little and rest, and do a little more and rest, and do a little more and rest again, rather than try to keep going all day." *Id.*

A functional capacities assessment test was performed by the plaintiff at McKennan Hospital. (Exhibit 10 and 14). The assessment found that plaintiff had the following major limiting factors: (1) decreased strength and endurance of the right lower extremity; (2) gait dysfunction secondary to right lower extremity; (3) decrease in overall endurance; 4) decrease in overall strength. (Exhibit 14 p. 3).

The assessment shows that plaintiff cannot stoop to the floor; can bend occasionally; cannot squat; can climb a 2–inch height on a step ladder occasionally; cannot reach above shoulder level when weighted with 5 pounds; can reach above shoulder level with no weight occasionally; can kneel occasionally; can balance with a cane occasionally; and can push and pull frequently. (Exhibit 15 p. 17). Further it shows that plaintiff can sit for 5 hours a day for 30 minutes at a time; can stand for 3 hours a day for 10 minutes at a time followed by at least a 10 minute rest; and can walk for 1 hour a day at 3 to 5 minutes at a time using a single point cane. *Id.*

Plaintiff could use his hands for repetitive action as follows: (1) simple grasping; (2) moderately firm grasping; (3) fine manipulating but at levels at a lower range than normal. Exhibit 14. It was determined that plaintiff could use his head and neck in a static position and or frequent flexing and rotating. *Id.* It was noted that "Mr. Oien experiences fatigue with repetitive movement—hence no categorization in continuous range given." *Id.*

The above reports were sent by the committee to Dr. Vandiver (Elliot) (Exhibit 15). After reviewing the additionally material Dr. Vandiver (Elliot) opined "that most of Mr. Oien's complaints consist of discomfort in lower extremities upon walking and exertion." *Id.* She stated: "In reviewing the functional capacity of Mr. Oien, I find that his limitations of endurance and activities would restrict him from working as a general laborer but would indicate that he would be able (sic) fulfill a light duty job, such as clerk, etc., which would allow some ambulation but resting as he feels he needs." *Id.* Dr. Vandiver (Elliot) opined that at sometime in the future that plaintiff's condition may deteriorate to the point where he is disabled, but at this point his limitations are not severe enough to find him totally and permanently disabled. *Id.*

After receiving Dr. Vandiver's (Elliot) opinion, the committee contacted Dr. John Billion. (Exhibit 17). The letter to Dr. Billion provided in part:

> Enclosed is the medical evidence presented to Farmland's Employee Retirement Plan on behalf of Iver Oien, a disability applicant. His doctor, Tom Burkhart, feels that Mr. Oien is totally and permanently disabled. However, our medical consultant in Kansas City is not thoroughly convinced.... Since this is a difficult case to judge, we are seeking the opinion of an independent expert.

*Id.* The letter also sets forth the definition of total disability contained in the plan. *Id.*

Dr. Billion reviewed the medical history, examined the plaintiff, and performed laboratory studies on the plaintiff. (Exhibit 18) Dr. Billion's letter to the committee provided:

Basically, this man presents as a 46 year old male with a previous history of polio myelitis and more recently a problem with muscle fatigue, aching, weakness, involving primarily the lower extremities and low back. In reviewing his motor weakness areas and muscular complaints, it would be my feeling that this man basically is totally disabled in terms of pursuing employment in the general laboring field.

I notice that this is in concurrence with Dr. Giebink [1] and also Dr. Vandiver. Dr. Vandiver does state that this man may work in a sedentary position. I can find no evidence that he is trained or capable of this type of work. I would feel that at his present status Mr. Oien is 100% disabled. If, indeed, he is retained, he may be able to re-enter the job market on a non-laboring basis, and therefore, change his work capabilities.

*Id.*

After the examination by Dr. Billion, plaintiff submitted to the committee information on the group, Tri–State Polio Survivors, Inc. (Exhibit 19) Plaintiff was a member of the group. *Id.* The information included an article entitled *Researching Post–Polio Syndrome*, originally authored by Dr. Easton. *Id.* The committee also received a letter from Kenneth Alfson, manager of the Baltic Elevator. (Exhibit 20). Mr. Alfson informed the committee that he had worked with the plaintiff since May of 1967. *Id.* The letter provided in part:

We .[have] worked together for over 18 years, so I know him pretty well. When Iver was younger he had polio. One of his legs all his life has been at least ½ the size as the good one, also it is crooked. 3–4 years ago he had an operation to straighten his toes out. In the last 2 years Iver has been working with lots of pain but he never complained, maybe a little hard to get along with sometimes. When we would get busy with fert. season or harvest he would have to be gone for a week at a time. Some of those times I stopped at his

house, it was hard on his pride to have the rest of the guys do his work for him. Iver wants to work but can't, he is not trying to pull anything on anybody.

*Id.*

The plaintiff's attorney also informed the committee that plaintiff had been found to be disabled by the Social Security Administration. (Exhibit 21). Plaintiff's counsel subsequently sent to the committee a report from Rich Ostrander, M.A. C.I.R.S., of the International Rehabilitation Associates. (Exhibit 22). Mr. Ostrander's report was prepared from the Functional Capacities Assessment and a personal interview with the plaintiff. *Id.* at p. 2. Mr. Ostrander noted plaintiff's complaints of weakness and fatigue. *Id.* He commented "Mr. Oien's appearance to this specialist was that of a man experiencing a great deal of fatigue and he was obviously tired by the trip from the car to the specialist's office."

*Id.* Mr. Ostrander also commented that:

[t]he Functional Capacities Evaluation was very consistent with the disability complaint which Mr. Oien voiced to this specialist. However, I suspect that Mr. Oien's condition has deteriorated somewhat since the date of this evaluation.

*Id.*

Mr. Ostrander opined:

Due to the physical limitations expressed by Mr. Oien and the Functional Capacities Evaluation, it is this specialist's opinion that there is no gainful employment for which Mr. Oien is competitively employable. It is further this specialist's opinion, that there is no retraining program that would be appropriate for Mr. Oien as it is my belief that he would be unable to compete in any type of training program. The most significant medical limitations which preclude even sedentary activity are the general loss of endurance and strength, loss of condition, the functional limitation on standing and sitting tolerance, right hand pinch strength, bilateral hand strength and limitation on walking. There is no question in the mind of this vocational specialist that unless Mr. Oien's condition im-

---

1. The Court has not been supplied with any medical report or opinion from Dr. Giebink.

proves significantly, he will be completely unemployable for the remainder of his life.

*Id.*

Plaintiff also submitted to the committee a letter from Dr. Easton, to his attorney. (Exhibit 24). Dr. Easton reported that she had not seen the plaintiff formally for over a year but had seen him casually at meetings of the post-polio syndrome. *Id.* She noted that based on Mr. Ostrander's report she believed plaintiff was functioning at a lower level than she had observed a year ago. *Id.* It was her opinion that "(w)ith the continuing loss of endurance, Mr. Oien is certainly not able now to be employed at his former truck-driving, delivery-type job." *Id.* Further she reported "[u]nless his strength and endurance improved markedly, I don't think he would be able to do any sedentary job that would require his being in a sitting position for any length of time or using his hands for a prolonged period. Any work he might do would have to be in very short periods and not involve any strength." *Id.*

Dr. Easton also prepared an Attending Physician's Statement. (Exhibit 25). In the statement she diagnosed plaintiff as suffering from "status post poliomyelitis with post-polio syndrome." *Id.* She noted the following subjective symptoms: increased weakness, fatigue, loss of endurance, muscle cramps, and loss of coordination. *Id.* She indicated that plaintiff was totally disabled since August of 1985. *Id.* On the progress section of the report she noted that plaintiff had retrogressed and is ambulatory. *Id.* She classified plaintiff's condition as a Class 5: Severe limitations of functional capacity; incapable of minimum (sedentary) activity. *Id.* She found plaintiff to be totally disabled from any type of work and indicated that no marked improvement was expected. *Id.* Dr. Easton also noted that plaintiff's pain and

fatigue may lessen but strength is not likely to improve. *Id.*

The committee after reviewing all of the evidence found plaintiff not to be disabled. (Exhibit 26). The certificate of disability determination:

The undersigned hereby certifies that on January 8, 1987, the CO-OP RETIREMENT COMMITTEE, with a quorum of committee members present, reviewed and discussed all information and medical evidence submitted with regards to the disability application of Iver M. Oien. The Committee decided that the evidence did not meet the requirements set forth in the Co-Op Retirement Plan, and on motion duly made, seconded and carried, the application of Iver M. Oien was denied.

*Id.*

The letter sent to the plaintiff informed him that the committee was denying his claim after reviewing all of the evidence and acting on the advice of the Plan's medical examiner. (Exhibit 27).

Plaintiff appealed the decision. (Exhibit 28). To support his claim of disability he submitted the progress notes of Dr. Burkhart from January 1985 to September of 1985. (Exhibit 29).[2] The letter also informed the committee that the Disability Determination Service of the South Dakota Department of Vocational Rehabilitation had determined that plaintiff was unable to engage in substantial gainful activity since August of 1985. The committee then sent the following materials to Dr. Vandiver (Elliot): (1) the appeal letter; (2) Dr. Easton's Attending Physician's Statement; (3) Dr. Burkhart's progress notes from January 1985 to September 1985; (4) a neurologist report; (5) Dr. R.L. Read's CAT scan report; (6) Dr. Soye's x-ray report; (7) Dr. R.P. DeClark's x-ray report; (8) Dr. V.A. Daintars' report entitled *Enhanced & Unenhanced Head CT;* and (9) the Functional Capacity Assessment Summary. (Exhibit

**2.** In plaintiff's appeal letter his counsel stated: "[f]urther, Mr. Oien attaches records of Dr. Thomas J. Burkhart of Sioux Falls, South Dakota, regarding his condition from August 1985 through February 1986, to substantiate this appeal." The exhibits provided to the court include progress notes from January of 1985 to September of 1985 (Exhibit 29); a neurologists report (Exhibit 30); and an x-ray report (Exhibit 31). The Court has not been provided with any records from Dr. Burkhart past September 1985.

32). The committee apparently did not send to Dr. Vandiver (Elliot) (1) Dr. Easton's letter to plaintiff's counsel; (2) Mr. Ostrander's report; (3) Mr. Alfson's letter; (4) the information on the Post–Polio Survivors, Inc. group; or (5) Dr. Billion's opinion on plaintiff's condition.

Dr. Vandiver (Elliot) sent to the Committee the following recommendation:

> I received the additional information submitted by Mr Oien. I have carefully reviewed all the information, functional capacity, assessment score sheets, in addition to the CT scan and x-ray reports that were submitted regarding Mr. Oien. I have carefully reviewed all the information and feel that Mr. Oien would not be eligible for the Farmland Disability Retirement Plan as he would still be a candidate for a sedentary job as I have stated before. If further consideration is needed, please do not hesitate to let me know.

*Id.*

After receiving Dr. Vandiver's (Elliot) recommendation, the committee denied plaintiff's appeal. (Exhibit 34).

## DISCUSSION

### THE PLAN PROVISIONS

The relevant portions of the plan are contained in Section 5.3. (Exhibit 2 p. 18–19). Section 5.3(a) allows for a participant with 36 months of participation to apply for total and permanent disability benefits prior to his normal retirement age. *Id.* Section 5.3(b) defines total and permanent disability as:

> A participant shall be deemed totally disabled if, on the basis of medical evidence of his condition within six (6) months of his last day worked satisfactory to the Retirement Committee, he is found to be wholly prevented from engaging in any occupation for wage or profit as a result of injury or disease from any cause ..., and he shall be deemed permanently disabled if, in the sole opinion of the Retirement Committee, he is likely to remain so totally disabled continuously and permanently.

*Id.* Pursuant to Section 5.3(d) the committee can "require proof of total disability ... in the form of a certificate from a duly licensed physician or physicians selected by the Retirement Committee and in such other manner of proof as the Retirement Committee may decide." *Id.*

### STANDARD OF REVIEW

It is well settled that a federal court may overturn a decision of the administrator of a private pension or employee benefit plan only if the decision is arbitrary, capricious, or an abuse of discretion. *Redmond v. Burlington Northern R. Co. Pension Plan*, 821 F.2d 461, 465 (8th Cir.1987); *Lawrence v. Westerhaus*, 780 F.2d 1321, 1322 (8th Cir.1985); *Short v. Cent. States, S.E. & S.W. Area Pen. Fund*, 729 F.2d 567, 571 (8th Cir.1984); *Torimino v. United Food & Commercial Workers International Union Industry Pen. Fund*, 712 F.2d 882, 883 (8th Cir.1983) (per curiam); *Bueneman v. Central States Southeast & Southwest*, 572 F.2d 1208, 1209 (8th Cir. 1978); *Phillips v. Kennedy*, 542 F.2d 52, 54 (8th Cir.1976).

"Judicial intervention in these cases is limited and courts are hesitant to interfere with the administration of a pension plan." *Bueneman*, 572 F.2d at 1209. The parties agree that this is the appropriate standard of review. However, they disagree on how the standard should be applied to this case. The plaintiff contends that the committee's decision must be supported by adequate or substantial evidence. The defendant contends that the decision must be sustained as long as there is some evidence supporting it.

In *Short* the court stated that in applying the standard, "a reviewing court must determine whether the Trustee's (sic) decision is supported by substantial evidence, and, if so, whether they have made an erroneous decision on a question of law." 729 F.2d at 571. In *Lawrence*, the court provided "[i]f there is evidence supporting the decision, it is not arbitrary, capricious or an abuse of discretion." 780 F.2d at 1322–23. However, in reviewing the evidence the court stated "[i]n this case there

is substantial evidence supporting the Board's decision." *Id.* In *Torimino,* the court stated "[t]he district court observed that the record contained conflicting medical evidence and found there to be 'adequate evidence supporting the trustees' decision." 712 F.2d at 883.

It is apparent that the standard is not self-defining. While the Court agrees with the plaintiff's argument that in reviewing a decision in this type of action it is important to focus on the facts of each case and determine whether or not the decision survives the arbitrary, capricious or abuse of discretion standard; it is the Court's view that the decision should not be reviewed to determine whether it is supported by substantial evidence. The arbitrary and capricious standard is a narrow form of review. In *Bowan Transportation, Inc. v. Arkansas–Best, Freight System, Inc.,* 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974) the Supreme Court described the arbitrary and capricious standard, under the Administrative Procedure Act, 5 U.S.C. § 706, by stating:

Under the "arbitrary and capricious" standard the scope of review is a narrow one. A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment ... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.... The agency must articulate a "rational connection between the facts found and the choice made." ... While we may not supply a reasoned basis for the agency's action that the agency itself has not given ..., we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.

*Id.* at 285–86, 95 S.Ct. at 442 (citations omitted).

The Seventh Circuit in *Pokratz v. Jones Dairy Farm,* 771 F.2d 206 (7th Cir.1985) explained that "[t]he 'arbitrary and capricious' standard calls for less searching inquiry than the 'substantial evidence' stan-

dard that applies to Social Security cases." *Id.* at 209. The narrow form of the review was emphasized by the court as follows:

Although it is an overstatement to say that a decision is not arbitrary or capricious whenever a court can review the reasons stated for the decision without a loud guffaw, it is not much of an overstatement. The arbitrary or capricious standard is the least demanding form of judicial review of administrative action. Any question of judgment are left to the agency, or here to the administrator of the Plan.

■ Therefore, it is the Court's view that it must review the committee's decision to see if it is supported by some evidence. In making this decision the Court may review only that evidence that was before the committee and it may not hold a *de facto* hearing on the question of plaintiff's eligibility. *Daniel v. Eaton Corp.,* 839 F.2d 263, 268 (6th Cir.1988). Even applying this deferential standard of review, the Court finds that the decision does not withstand the arbitrary, capricious or abuse of discretion standard.

## ANALYSIS

■ A review of the evidence shows that Dr. Burkhart, one of plaintiff's treating physicians, found plaintiff to be totally and permanently disabled. Dr. Burkhart found plaintiff unable to perform any type of work activity. He did not expect plaintiff's condition to improve.

Dr. Easton, also one of plaintiff's treating physicians, found plaintiff to be totally disabled from any employment and did not expected his condition to improve. She found plaintiff to be incapable of performing sedentary activity. She also believed that plaintiff's condition had deteriorated in the year after she had last professionally treated him.

The function capacities assessment test found plaintiff to have limited endurance and strength of the right lower extremity, a gait dysfunction; decreased overall endurance; and decreased overall strength.

Specifically, among other things, the test determined that plaintiff could sit for only

5 hours a day for 30 minutes at a time; could stand for 3 hours a day for 10 minutes at a time followed by at least 10 minutes test; and could walk for 1 hour a day for 3 to 5 minutes at a time with the use of a cane. The test found that plaintiff was limited in his ability to lift and kneel. Further, it found plaintiff could walk a maximum of 1/10 of a mile and this required 5 minutes and 15 seconds to perform.

Mr. Ostrander found plaintiff to be totally and permanently disabled. Mr. Ostrander also believed that plaintiff would not be able to compete in any training program. His report provided: "[t]he most significant medical limitations which preclude even sedentary activity are the general loss of endurance and strength, loss of coordination, the functional limitation on standing and sitting tolerance, right hand pinch strength, bilateral hand strength and limitation on walking." Further, he found unless plaintiff's condition improves significantly, "he will be completely unemployable for the remainder of his life."

Dr. Billion also found the plaintiff to be 100% disabled. He noted that Dr. Vandiver (Elliot) believed plaintiff capable of performing sedentary activity. In this regard Dr. Billion stated "I can find no evidence that he is trained or capable of this type of work. I would feel that at his present status Mr. Oien is 100% disabled. If, indeed, he is retrained, he may be able to re-enter the job market on a non-laboring basis, and therefore, change his work capabilities."

The committee was also informed that plaintiff had been found disabled by the Social Security Administration. Further, they were informed that the South Dakota Department of Vocational Rehabilitation had determined that the plaintiff was unable to engage in substantial gainful activity. Mr. Alfson's letter was also before the committee.

However, Dr. Vandiver (Elliot) found the plaintiff to be capable of performing sedentary activity. Further, Dr. Vandiver (Elliot) never examined the plaintiff.

The defendant argues that the Court must sustain the committee's decision because Dr. Vandiver's (Elliot) opinion is enough to support the decision. It is argued that based on *Torimino v. United Food & Commercial Workers International Union Industry Pension Fund,* 548 F.Supp. 1012 (E.D.Mo.1982) *aff'd* 712 F.2d 882 (8th Cir.1983) that this Court has no choice but to affirm the Committee's decision. Defendant's argument is premised on the alleged factual similarities between *Torimino* and this case.

In *Torimino* the court found that there was conflicting evidence as to whether plaintiff was "totally and permanently disabled." *Id.* at 1013. The court held that as long as some evidence supported the decision it could not be overturned. *Id.* A review of the *Torimino* decision shows that Torimino's own physician opined that he might return to light work if it were available. *Id.* The medical consultant found him not to be permanently disabled because "his doctor (Dr. Kuhlman) states he can return to some form of light work if it were available to him." *Id.*

It is the Court's view that Torimino is not factually similar to this case. All of the reports from the examining and treating physicians in this case found plaintiff to be totally and permanently disabled. The only physician who found plaintiff to be capable of sedentary activity was Dr. Vandiver (Elliot), the medical consultant. A review of her opinion shows that she did not point to anything in plaintiff's medical records to support her decision. Further, her opinion was not based on all of the evidence. She did not review the vocational expert's report or Dr. Billion's report. While the Court believes that the review by medical consultant is appropriate in these cases, it is the Court's view that in order for the medical consultant's opinion to amount to evidence supporting a decision of no disability that opinion must point to evidence in the record supporting it and must be based on all of the evidence. The medical consultant's opinion cannot, when refuted by the opinions of all the treating and examining physicians, create an evidentiary basis for denying the claim.

Further, defendant's argument that Dr. Billion's statement that "[i]f, indeed, he is retrained, he may be able to re-enter the job market on a non-laboring basis, ..." enhances the committee's reliance of Dr. Vandiver's (Elliot) opinion is not meritorious. The statement when read in context shows that it was speculation on Dr. Billion's part. Dr. Billion, unequivocally, found plaintiff to be 100% disabled.

The Court finds that the Committee's decision to deny plaintiff's claim for disability benefits on the advice of Dr. Vandiver (Elliot) was arbitrary and capricious.

Now, therefore,

IT IS ORDERED:

(1) That defendant's motion for summary judgment is denied.

(2) That plaintiff's motion for summary judgment is granted.

(3) That the committee is directed to award plaintiff his disability benefits retroactive to August 16, 1985.