**Randall N. GOLDAMMER, Plaintiff,**

v.

**AID ASSOCIATION FOR LUTHERANS, Defendant.**

**No. CIV 89–4129.**

United States District Court, D. South Dakota, S.D.

Oct. 23, 1990.

Charles Rick Johnson, Gregory, S.D., for plaintiff.

Mark V. Meierhenry, Sioux Falls, S.D., for defendant.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

JOHN B. JONES, District Judge.

This matter is before the Court on cross-motions for summary judgment. There is no real factual dispute, and summary judgment can be entered for the defendant for the reasons set out below.

### FACTS

Randy Goldammer became an insurance agent for Aid Association for Lutherans (AAL) in 1984. As an agent he was insured by AAL's Agents' Income Protection Plan (Plan), which both parties agree is a plan covered by ERISA. The plan's definition contains two ways to qualify for disability:

> The term "total disability" shall mean the complete inability of a district representative or general agent, because of injury or sickness, to perform the duties of his or her occupation until such disability has continued for 24 months.

Thereafter, total disability shall mean the complete inability of a district representative or general agent, as a continuing result of the same injury or sickness, to perform the duties of any occupation in which such district representative or general agent might reasonably be expected to engage because of education, training, or experience. During the period of total disability, the district representative or general agent must be under the care of a qualified licensed physician.

During the first year and a half he was a highly successful agent for AAL. In late 1985, he sought additional medical treatment for an old neck injury.[1] He began seeing an orthopedic physician, Dr. Carlson, who wished to consult with several other doctors before proceeding with an aggressive treatment. Mr. Goldammer then began seeing a neurosurgeon, Dr. Blume, who did a fusion of vertebrates at the C6–7 level on March 6, 1986.

Mr. Goldammer (Randy) had requested disability in February and on April 10, 1986 he was awarded total disability under the first disability definition.

Dr. Blume certified that Randy was no longer disabled and eligible to return to work on September 5, 1986 (Tab 73). Randy apparently attempted to return to work for a few days but found the pain to be too much. Dr. Blume changed his opinion in October and certified that Randy was again disabled. In documents sent during October and November of 1986 he stated that Randy was disabled, but it was uncertain how long such disability would continue. (Tabs 70, 71).

Randy did not see Dr. Blume after those certifications but returned to Dr. Carlson. Dr. Carlson treated him and had him see Drs. Johnson, Payne and Dzintars between September 5, 1986 and April, 1987. Randy also consulted with the Headache and Pain Center until December, 1986 and visited Mayo clinic for an assessment in April of 1987.

Mayo recommended a pain treatment clinic and Randy completed a one month course with the pain center at McKennan hospital in August of 1987. In August of 1987, (Tab 58), Dr. Carlson filled out a form stating that Randy was no longer disabled and could return to work. The Pain Center at McKennan also indicated he was able to work. Both recommended that he begin work on a part-time basis and work into full-time.

A functional assessment was done by the McKennan pain center. The assessment had the following conclusions: (1) he could sit for up to six hours in an eight hour work day, a maximum of 60 minutes at a time; (2) he could stand for three hours a day, maximum of 10 minutes continuously; (3) he could walk for seven hours a day, maximum observed was for fifteen minutes continuously. His ability to bend was not assessed, but he could squat, stoop to the floor, climb, reach above shoulder lever and push and pull occasionally. He could carry up to ten pounds occasionally and lift up to thirty-five pounds occasionally with lifting up to ten pounds frequently. The assessment also showed an ability to use his feet for repetitive movements and ability to grasp up to 80 lbs. with the right and 62 lbs. with the left hand. Randy could occasionally use his head in static position with frequent flexing and rotating.

Mr. Goldammer again changed doctors and in October of 1987, Dr. Baas found him to be disabled. (Tab 53). In February of 1988, Dr. Berry, a physician in Dr. Baas' clinic wrote:

"I feel there is an extremely strong functional overlay that the patient is unaware of and I hate to see him live his whole life feeling he can't work. States he remains at home and I can't believe the pain is any less at home than it would be out on a job. He has good skills in that area and made a good living."

---

1. Mr. Goldammer was playing softball in 1975 when he fell forward injuring his neck and shoulder. From 1975 to 1982 he received chiropractic treatments that were 100% effective for periods ranging from a day to a week. In 1982 he had consulted with Mayo clinic and continued to treat the pain in a conservative manner until 1986.

(Tab 10). Nevertheless, Dr. Baas again certified disability in March of 1988. (Tab 53).

In March of 1988, AAL requested an independent medical evaluation from Dr. Moral of Medical Evaluation, Inc. Dr. Moral reviewed the file and conducted a physical exam of Randy. On May 31, 1988 Dr. Moral wrote an opinion stating that Randy was able to return to work. (Tab 33). Based on Dr. Moral's opinion, Randy's disability benefits were terminated by the plan administrator and he was placed on a return to work status on June 23, 1988. (Tab N).

Dr. Moral requested additional clinical reports, reviewed his assessment and filled out a functional assessment form, reaffirming his opinion that Randy was not disabled. (Tab 28). In August, due to Randy's request for review of the administrator's decision, new medical records were forwarded to Dr. Moral who again affirmed his opinion.

In addition, AAL had an independent claim investigation done by Equifax Services in September of 1988. That final report, (Tab U), showed that Randy did exhibit some signs of discomfort during the interview. However, the report stated that he watched his two small children during the day while his wife worked and he stated he could do about anything in moderation. The interviewer also noted that Randy showed no signs of discomfort when he made swift swiveling movements to yell at the kids. The townspeople interviewed said that Randy did do his own lawn work, he attended numerous athletic events and was an enthusiastic fan (waving of arms and jumping up and down), and one person indicated they had seen him painting his brother's house.

Dr. George C. Flora also reviewed the medical records and opinions of all doctors who had examined and treated Randy and in February of 1989, issued an opinion that Randy was not disabled (Tab 7). No vocational specialist was ever contacted (other than the McKennan pain center) by AAL, but Randy had an assessment done. The vocational specialist hired by Randy felt he was disabled. (Tab MVR report).

Randy attempted to return to his job in the spring of 1989 but was subsequently terminated on July 20, 1989 for poor performance.

### ANALYSIS

▆▆▆ The parties' briefs agree that the standard of review for the administrator's decision under an ERISA plan is arbitrary, capricious, or an abuse of discretion when the plan gives the administrator the broad type of discretion he is given under this plan. *See Firestone v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In reviewing the administrator's decision under the arbitrary and capricious standard, the question is not whether the decision is supported by substantial evidence, but rather whether the decision is supported by some evidence. *Oien v. Co-op. Retirement Committee*, 709 F.Supp. 917 (D.S.D.1989).

Applying that standard to this case, it is apparent that the administrator's decision is supported by some evidence. Dr. Carlson found him to be capable of returning to his work as an insurance agent and both of the independent medical assessments done for AAL, the one by Dr. Moral and the one by Dr. Flora, found Randy capable of performing his job. Each of the medical consultants stated physical reasons for their opinions and cited to the doctor reports and other evidence which they relied on for their opinions. Tabs L, Q, & Z. Furthermore, the pain center at McKennan felt Randy was capable of work, most of the doctor reports indicate that he had relatively good mobility in his neck (Tab McKennan), Dr. Berry felt he should return to his job and the Equifax investigation indicated that he was capable of a wide range of normal activities, including yard work and painting his brother's house.

There were several doctors who felt he was disabled and the vocational rehab assessment done by Rick Ostrander indicated disability, so the records present conflicting medical opinions.

Both Dr. Moral and Dr. Flora stated that the objective medical findings did not support the plaintiff's contentions of inability to perform his job. Even Randy's doctors reports note good range of mobility in office examinations and the Equifax report shows an ability to do a wide range of activities.

The plaintiff cites to the case of *Gunderson v. W.R. Grace Long Term Disability Income Plan*, 874 F.2d 496, 499 (8th Cir.1989), claiming that a vocational expert's testimony is required before an ERISA plan can deny disability. It is important to note a distinction between the *Gunderson* case and this one. In *Gunderson*, the insurance company was attempting to use the same doctor reports that qualified the plaintiff for disability from his own occupation to say that he was able to do other occupations. The court felt that a vocational specialist was needed to determine if the plaintiff's abilities matched other jobs.

The plaintiff objects to the fact that the final denial after review came from a Mr. Hanson, not the plan administrator, and that the denial after the request for review was 202 days after the request instead of 120 days as is the standard for these reviews. The plaintiff's brief cites to 29 C.F.R. § 2560.503-1 for support of their contention that these procedural defaults entitle them to summary judgment. A correct reading of the C.F.R. section is that the denial may be made by a person designated by the administrator. Also, if a decision on a request for review has not been received within 120 days after the request, the disability request is to be considered denied, regardless of who the plan designated to review the request.

In the case at bar, the insurance company had gotten at least two unretracted medical opinions that Randy could return to his own occupation. Both Dr. Carlson and the Pain Center at McKennan certified that the plaintiff's medical limitations would not prevent him from returning to his job with AAL. Those opinions were given *before* the expiration of the first period of disability under the policy, i.e. the

first 24 months. It was partly due to inconsistent medical assessments that AAL requested the independent evaluation by Dr. Moral. Dr. Moral and Dr. Flora both concluded that the plaintiff no longer met the qualifications for being disabled from his work with AAL. (Tabs 7, 28, 33). Thus, disability was denied at least partly on the basis that Randy could return to his old occupation, not that he was incapable of engaging in other occupations. Since the requirements of his job were known and the doctors could match his functional limitations to that job, there was no need for a vocational specialist to testify to the existence of other jobs.

Plaintiff relied heavily on my prior decision in *Oien v. Co-op. Retirement Committee, supra,* in oral argument. In *Oien,* all of opinions of the treating and examining physicians were that the claimant was totally disabled. The reviewing medical consultant retained by the defendant reviewed the medical records and reached the opposite result, and I held that this approach cannot be used to create an evidentiary basis for denying the claim.

This case differs from *Oien* in that here some of the treating and examining physicians concluded that the plaintiff was disabled and some concluded that he was not disabled and the medical consultants were faced with the task of reviewing conflicting medical opinions, whereas in *Oien* all of the medical opinions found disability. Unlike the use of the medical consultant in *Oien,* this use of medical consultants is clearly proper.

The plaintiff's Motion for Summary Judgment is denied, and the defendant's Motion for Summary Judgment is granted. The Clerk of Courts is directed to enter judgment for the defendant on all of the issues herein.

IT IS SO ORDERED.